UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

| | |
|---|---|
| JULES ANTHONY SIMON | CASE NO. 19-11330 |
|     DEBTOR | CHAPTER 7 |

ANDREW J. HARRISON, JR.
    PLAINTIFF

VERSUS                                            ADV. NO. 20-1041

JULES ANTHONY SIMON
    DEFENDANT

CONSOLIDATED FOR TRIAL WITH

ANDREW J. HARRISON, JR.
    PLAINTIFF

VERSUS                                            ADV. NO. 21-1024

JULES ANTHONY SIMON
    DEFENDANT

**MEMORANDUM OPINION**

**I.   PROCEDURAL HISTORY**

Consolidated for trial were complaints in adversary no. 20-1041 objecting to the dischargeability of Jules Simon's debt to Andrew Harrison and adversary no. 21-1024, in which Harrison objected to Simon's discharge.[1]

---

[1] October 8, 2021 order in Adversary No. 20-1041, P-18.

The court dismissed part of Harrison's amended complaint in adversary no. 20-1041 on Simon's motion.[2] The remaining causes of action in adversary no. 20-1041 are objections to dischargeability as a debt arising out of 1) false pretenses, false representation or actual fraud under 11 U.S.C. § 523(a)(2)(A) and 2) willful and malicious injury under § 523(a)(6).

On motion by Harrison based on his discovery of post-petition actions after the February 18, 2020 deadline for objecting to discharge,[3] the court extended the deadline under Fed. R. Bankr. P. 4004(b)(2) for Harrison to object to the debtor's discharge.[4] Harrison then timely filed adversary no. 21-1024 objecting to the debtor's discharge under 11 U.S.C. §§ 727(a)(2)(B), (d)(1) and (d)(2). Harrison later abandoned his claims under §§ 727(d)(1) and (d)(2),[5] so the sole objection to discharge remaining for trial fell under § 727(a)(2)(B). The plaintiff premised that claim on Simon's alleged post-petition transfer, removal or concealment of property with the intent to hinder, delay or defraud creditors.

## II. OBJECTION TO DISCHARGE

### A. FACTS

The plaintiff alleged that Simon had transferred, removed or concealed property with the intent to hinder, delay or defraud creditors, sanctionable by loss of his discharge.[6] Harrison's

---

[2] January 25, 2021 order in Adversary No. 20-1041, P-43.

[3] June 11, 2021 Motion to Extend Deadline to Object to Discharge in Case No. 19-11330, P-218.

[4] August 9, 2021 order Extending Deadline to Object to Discharge through August 27, 2021 in Case No. 19-11330, P-250.

[5] Harrison's contested conclusions of law in the pretrial order [P-165] and his proposed findings of fact and conclusions of law [P-181] address only Bankruptcy Code section 727(a)(2)(B). Sections 727(d)(1) and (d)(2) are inapplicable because they deal with revocation of a previously-entered discharge.

[6] *See* 11 U.S.C. § 727(a)(2)(B).

challenge to Simon's discharge rests on the debtor's post-petition dealings relating to D Squared Hunting LLC ("D Squared"), in which Simon owned an interest when he filed chapter 7.

Simon, his brother Denis Simon, III ("Denis"), and Wendell Spencer, through his company WJC Enterprises, LLC, formed D Squared to buy land for a hunting camp. On February 9, 2010, D Squared bought real estate in Wilkinson County, Mississippi for $635,000, financed in part by Louisiana Land Bank.[7] The D Squared members agreed that each would make one-third of the quarterly mortgage payments to the bank.

Simon became unable to make his share of the quarterly payments in 2016. Denis at first loaned Simon money to make the payments[8] but later made his brother's share of the quarterly payments directly to the bank. The two orally agreed that Denis would at some point receive Simon's interest in D Squared to satisfy the debt, but the brothers never documented their agreement.[9]

Simon filed chapter 7 on November 11, 2019 and scheduled his one-third interest in D Squared as having no value. The schedules recited that D Squared "owns 350 wetland acres in Woodville, MS, valued at $375,000, Land Bank mortgage balance $375,000."[10] Simon did not schedule Denis as a creditor, nor did Denis file a proof of claim.

---

[7] February 9, 2010 sale documents, Defendant's Exhibit 20. The bank financed $463,500 of the sale price,

[8] Denis testified that if there was not enough time to pay Simon before the payment was due, he would make Simon's mortgage payment directly. Transcript Vol. 2, 3/29/22, Adversary No. 20-1041, P-175, p. 408, ll. 21-25.

[9] Transcript Vol. 2, 3/29/22, Adversary No. 20-1041, P-175, p. 409, ll. 9-22; Transcript Vol. 4, 3/31/22, P-177, p. 627, ll. 12-21; p. 632, l. 12–p. 633, l. 12.

[10] Simon's Schedule B and Amended Schedule B are identical as to D Squared, Case No. 19-11330, P-8, p. 6; and P-14, p. 7; Plaintiff's Exhibit 81.

D Squared sold the property on March 3, 2021 for $469,800, well after Simon filed chapter 7.[11] Louisiana Land Bank's debt was satisfied, and the two D Squared members other than the debtor divided the remaining sales proceeds of $168,244.01: one-third to WJC Enterprises, LLC ($56,081.34) and two-thirds to Denis ($112,162.67). Neither the debtor nor the bankruptcy estate received any of the sale proceeds.

Later that month, Harrison, without knowing of the sale, propounded to Simon interrogatories and requests for production of documents related to D Squared. Simon objected on the basis of relevancy on April 23, 2021.[12] That objection was of dubious merit given that merely weeks later, Simon's bankruptcy counsel reported the sale to the chapter 7 trustee, Martin Schott, advising that Simon did not receive any part of the sale proceeds.[13] Harrison learned of the sale in late May 2021, when Simon supplemented the discovery responses he had previously challenged as irrelevant.[14]

Harrison objects to Simon's discharge on the ground that Simon transferred his share of the sale proceeds to Denis to keep them out of the reach of creditors. Simon responds that he was not entitled to any share of the money because he and his brother had an unwritten agreement giving Denis any sums attributable to Simon's one-third interest in D Squared.

---

[11] The property sold for significantly less than its $635,000 purchase price. March 3, 2021 sale documents, Defendant's Exhibit 21. Denis attributed the decline in value to repeated river flooding that made the road to the site impassable much of the year, as well as loss of timber on the property. Transcript Vol. 2, 3/29/22, Adversary No. 20-1041, P-175, pp. 427-30.

[12] Defendant's Response to Plaintiff's First Set of Requests for Production of Documents, Plaintiff's Exhibit 62, Response 17; Defendant's Answers to Plaintiff's First Set of Interrogatories, Plaintiff's Exhibit 63, Response 6.

[13] May 11, 2021 email, Defendant's Exhibit 26.

[14] Defendant's Supplemental Discovery Responses, Plaintiff's Exhibit 90. Harrison's counsel emailed Schott regarding the sale on May 24, 2021. Defendant's Exhibit 27. The trustee replied that he already knew of the sale. Defendant's Exhibit 28. Schott ultimately decided not to object to Simon's discharge because he doubted that he could prove the debtor's intent as section 727(a)(2)(B) requires. Transcript Vol. 4, 3/31/22, Adversary No. 20-1041, P-177, p. 680, ll. 8-14.

Harrison also alleges that Simon concealed the transfer by not disclosing it to the trustee for two months after the sale[15] and by not amending his schedules.[16]

### B. ANALYSIS

Bankruptcy Code § 727(a)(2)(B) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—…

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed— …
>
> > (B) property of the estate, after the date of the filing of the petition ….

Loss of a discharge thwarts the primary reason for seeking bankruptcy relief and is a serious penalty for misconduct during a bankruptcy case.[17]  As the Fifth Circuit observed in *In re Packer*,[18]

> [a] basic principle of bankruptcy [is] that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start.[19]

---

[15] D Squared sold the property on March 3, 2021.  Defendant's Exhibit 20.  Simon's counsel informed the trustee of the sale on May 11, 2021.  Defendant's Exhibit 26.

[16] Fed. R. Bankr. P. 1007(h) requires a debtor to supplement his schedules within 14 days of  "acquir[ing] or becom[ing] entitled to acquire any in interest in property" post-petition.

[17] *See Walker v. M&M Dodge, Inc. (In re Walker),* 180 B.R. 834, 840 (Bankr. W.D. La. 1995) ("Discharge is the legal embodiment of the "fresh start"); *Benchmark Bank v. Crumley (In re Crumley),* 428 B.R. 349, 367 (Bankr. N.D. Tex. 2010) (citing *Washington 1993, Inc. v. Hudson (In re Hudson)*, 420 B.R. 73, 100 (Bankr. N.D.N.Y. 2009) ("The denial of a discharge is one of the harshest and most punitive sanctions in bankruptcy, and must not be undertaken lightly.")).

[18] *Judgment Factors, L.L.C. v. Packer (In re Packer),* 816 F.3d 87 (5th Cir. 2016).

[19] *Id*. at 91 (quoting *Hudson v. Raggio & Raggio, Inc. (In re Hudson),* 107 F.3d 355, 356 (5th Cir.1997)).

The creditor objecting to discharge bears the burden of proof by a preponderance of evidence.[20] Thus Harrison had the burden of proving:

> 1) a transfer… or concealment of property (2) belonging to the estate (3) post-petition (4) that was made with the intent to hinder, delay, or defraud a creditor of [the debtor].[21]

### 1. WAS THERE A TRANSFER OF PROPERTY OF THE ESTATE?

Bankruptcy Code section 541(a)(1) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of commencement of the case." The Fifth Circuit held in *In re Croft*[22] that determining whether property belongs to a bankruptcy estate involves consulting both state and federal law.

> [A] debtor's property rights are determined by state law, while federal bankruptcy law applies to establish the extent to which those rights are property of the estate.[23]

Simon contends that Harrison failed to prove that any estate property was transferred in connection with the D Squared transaction. He reasons that under the law of Mississippi, where D Squared was organized,[24] the real estate sale proceeds belonged to D Squared rather than its members. Thus Simon argues that D Squared's property was transferred, and not the estate's property. Simon cites Miss. Code Ann. § 79-29-701 in support:

> A financial interest in a limited liability company is intangible personal property. A member has no interest in specific limited liability company property.

---

[20] Fed. R. Bankr. 4005; *The Cadle Co. v. Duncan (In re Duncan),* 562 F.3d 688, 695-96 (5th Cir. 2009) (citations omitted).

[21] *A&M Investments, LLC v. Kirtley (In re Kirtley)*, 533 B.R. 154, 163 (Bankr. S.D. Miss. 2015) (citing *Cadle Co. v. Pratt,* 2004 WL 718977, at *2 n. 2 (N.D. Tex. 2004), *aff'd sub nom. Cadle Co. v. Pratt (In re Pratt),* 411 F.3d 561 (5th Cir. 2005); *Oldendorf v. Buckman,* 173 B.R. 99, 106 (E.D. La. 1994)).

[22] *Croft v. Lowry (In re Croft),* 737 F.3d 372 (5th Cir. 2013).

[23] *Id.* at 374-375 (citing *Mitchell v. BankIllinois,* 316 B.R. 891, 896 (S.D. Tex. 2004); *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); and *Stanley v. Trinchard,* 500 F.3d 411, 418 (5th Cir. 2007)).

[24] March 25, 2022 Uncontested Material Facts, P-165, p. 8, ¶ 87.

Although D Squared's assets were not property of Simon's bankruptcy estate, Simon's financial interest[25] in D Squared *was* Simon's intangible personal property that became property of the estate when he filed chapter 7.[26] Simon allowed his financial interest in D Squared's sale proceeds, which properly were payable on account of an interest in the limited liability company belonging to the bankruptcy estate, to be transferred to his brother. That circumvented the bankruptcy process of determining rights to property of the estate and entitlement to share in the proceeds of that property.

### 2. DID SIMON INTEND TO HINDER, DELAY OR DEFRAUD?

Proving intent can be challenging, as the Fifth Circuit observed in *Matter of Wiggains*.[27]

> We start from the reality that a transferor's actual intent is rarely susceptible to direct proof. Given these evidentiary difficulties, courts have looked to the circumstances of the transfer to infer intent. When fraud is suggested, this court has recognized six "badges of fraud" to help identify that intent ….[28]

The six badges of fraud are:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit

---

[25] Miss. Code Ann § 79-29-105(h) defines *financial interests* as (i) rights to share in profits and losses as provided in Section 79-29-505; (ii) rights to share in distributions as provided in Section 79-29-507; (iii) rights to receive interim distributions as provided in Section 79-29-601; (iv) rights to receive distributions upon withdrawal as provided in Section 79-29-603; (v) rights to receive allocations of income, loss, deduction, credit or similar items; (vi) appraisal rights as provided in Section 79-29-231; and (vii) any other rights granted in the certificate of formation or the operating agreement that are in addition to the above and are designated as "financial interests" or "financial rights" by the limited liability company. …

[26] Simon's argument that the proceeds were not property of his estate because he was not entitled to a distribution from D Squared when the proceeds were disbursed to his brother is appealing. Indeed, Miss. Code Ann. § 79-29-601 provides that members of an LLC do not have the right to receive distributions before they withdraw unless otherwise provided in the certificate of formation or operating agreement. The certificate of formation [Plaintiff's Exhibit 92] lacks any provision for interim distributions and D Squared had no operating agreement. But although no *distribution* was due Simon, Miss. Code. Ann. § 79-29-505 gave him the right to share in the limited liability company's profits.

[27] *Wiggains v. Reed (Matter of Wiggains)*, 848 F.3d 655 (5th Cir. 2017) (citing *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701-02 (5th Cir. 2003); and *Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1067 (5th Cir. 2008)).

[28] *Wiggains*, 848 F.3d. at 661.

or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.[29]

A finding of the intent the statute requires does not require evidence of all the badges.

Any of these factors alone may be sufficient to find an intent to hinder, delay, or defraud creditors; "the accumulation of several factors indicates strongly that the debtor possessed the requisite intent."[30]

Evidence touching on several of the badges weighs against this debtor. For example, the familial relationship between Simon as transferor and his brother Denis as transferee supports a presumption of fraudulent intent.[31] Also weighing in support of a finding of fraudulent intent are Simon's continued use of the property for hunting after the agreement with his brother[32] and his financial difficulties leading to the brothers' oral agreement.[33] Though perhaps not easily characterized as falling under one of the badges, Simon's knowledge of the sale beforehand and his failure to disclose it to the trustee before the closing support an inference that Simon intended to conceal the transaction.[34]

---

[29] *Soza*, 542 F.3d at 1067 (citations omitted).

[30] *A&M Investments, LLC v. Kirtley (In re Kirtley),* 533 B.R. 154, 163 (Bankr. S.D. Miss. 2015) (quoting *FDIC v. Sullivan (In re Sullivan),* 204 B.R. 919, 941 (Bankr.N.D.Tex.1997)); *see also Cannella v. Jackson (In re Jackson)*, 625 B.R. 648, 652 (Bankr. S.D. Tex. 2021).

[31] *Cadle Company v. Pratt, (Matter of Pratt),* 411 F.3d 561, 566 (5th Cir. 2005). *Pratt* involved an objection to discharge under section 727(a)(2)(A), but the court in *Schmidt v. Cantu (In re Cantu)*, 2011 WL 672336, at *6 (Bankr. S.D. Tex. 2011), applied the same analysis to a claim under section 727(a)(2)(B).

[32] Transcript Vol. 2, 3/29/22, Adversary No. 20-1041, P-175, p. 411, ll. 8-12.

[33] One badge weighing in Simon's favor was that the transfer arguably was made for consideration because Denis had advanced funds to his brother or made mortgage payments on the debtor's behalf. However that was insufficient to rebut the presumption in light of the other evidence.

[34] Simon testified that he knew of the sale in advance but not the specific date of the closing. Transcript Vol. 2, 03/29/22, Adversary No. 20-1041, P- 175, p. 273, ll. 8-12. Simon signed an Action by Unanimous Written Consent

The presumption of fraudulent intent that arose due to Simon's transfer to a relative affects the burden of proof.[35] The Fifth Circuit held that "once this presumption attaches, the burden shifts to the debtor "[to demonstrate] that he lacked fraudulent intent."[36] Faced with the presumption, the burden shifted to Simon to prove that he lacked fraudulent intent in connection with the D Squared transaction.

The Fifth Circuit reminded in *Reed v. City of Arlington*[37] that the bankruptcy system was designed to:

> "bring about an equitable distribution of the bankrupt's estate among creditors holding just demands," *Kothe v. R.C. Taylor Trust,* 280 U.S. 224, 227, 50 S.Ct. 142, 74 L.Ed. 382 (1930), and to "grant a fresh start to the honest but unfortunate debtor," *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (citation and internal quotation marks omitted).[38]

Simon's behavior was not consistent with this objective.

The debtor listed his one-third interest in D Squared as an asset in Schedule B.[39] Under Fifth Circuit jurisprudence,

> Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions.[40]

---

of the Members of D Squared authorizing D Squared to sell its property and Denis to sign the act of sale. Defendant's Exhibit 21.

[35] *Pratt,* 411 F.3d at 565-66.

[36] *Pratt,* 411 F.3d at 566 (quoting *The National Bank of Pittsburg v. Butler (In re Butler)*, 38 B.R. 884, 888 (Bankr. D. Kan. 1984)).

[37] *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

[38] *Reed,* 650 F.3d at 574.

[39] Simon's Schedule B and Amended Schedule B describe D Squared in almost identical words, Case No. 19-11330, P-8, p. 6; and P-14, p. 7; Plaintiff's Exhibit 81.

[40] *Rex-Tech International, LLC v. Rollings (In re Rollings),* 451 F.App'x 340, 348 (5th Cir. 2011) (quoting *In re Bohrer,* 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001)); see also Morash v. Valley Ridge Roofing and Construction, L.L.C. (Matter of Silver State Holdings, Assignee 7901 Boulevard 26, L.L.C.)*, 2022 WL 3755778, at *4 (5th Cir. 2022).

So Simon's schedules establish that he knew he owned a one-third interest in D Squared when he filed bankruptcy in November 2019, though he assigned no value to it above the outstanding mortgage debt. He testified that he scheduled the LLC interest as worthless because the company's only asset, real property, was practically useless due to flooding.[41]

The Fifth Circuit held in *In re Coastal Plains, Inc.*,[42]

> It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, …. 11 U.S.C. § 521(1) … "The duty of disclosure in a bankruptcy proceeding is a continuing one, …".[43]

Simon had an obligation to disclose the proposed sale of the D Squared property once the long-awaited offer was made. The trustee and creditors eventually might have concurred with the debtor's analysis of his interest in the property and its value to the bankruptcy estate, but the decision to deal with his brother was not Simon's alone to make.

Evidence established that Simon knew in March 2021 that D Squared had obtained a buyer for its property. On March 3, 2021, Simon signed the Action by Unanimous Written Consent of the Members of D Squared authorizing D Squared to sell its property and for Denis to

---

[41] Transcript Vol. 4, 3/31/22, Adversary No. 20-1041, P-177, p. 649, l. 21–p. 650, l. 14. Also, Denis testified that D Squared had marketed the property since 2018 and until 2021 had only received offers for less than the outstanding mortgage debt, possibly because the property was prone to flooding. Transcript Vol. 2, 3/29/22, Adversary No. 20-1041, P-175, pp. 427-30.

[42] *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197 (5th Cir. 1999).

[43] *Coastal Plains*, 179 F.3d at 207-08 (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n,* 932 F. Supp. 859, 867 (E.D.Tex.1996)). *See also* Fed. R. Bankr. P. 1007(h), which provides:

> If, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 14 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the chapter 7 liquidation case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual debt adjustment case.

sign the act of sale on behalf of D Squared.[44]  Despite knowing that the sale of property would yield amounts above the mortgage debt, Simon did not amend his schedules to show the increase in value or the transfer of sale proceeds to his brother.  Rather, Simon waited to disclose the sale to the trustee until after Harrison asked about D Squared in discovery.[45]  Nor has he ever amended his schedules.

Simon insists that he and his brother had an oral agreement but repeatedly admitted on cross-examination by Harrison's counsel that no written agreement memorialized the brothers' arrangement.[46]  His brother's testimony also casts doubt on the credibility of the debtor's claims concerning the value of his LLC interest.  On cross-examination, Denis confirmed that he did not have records of the amounts he paid on the mortgage debt on Simon's behalf.[47]  D Squared itself had no records of members' capital contributions, no accounting records and no operating agreement.[48]  Denis also reluctantly agreed that the money he had advanced on the defendant's behalf would be a gift "if it had to be."[49]

Q: Did you essentially regard that money as a gift that you made to your brother?

A: Only if it had to be. …

Q: It was a gift, was it not?

---

[44] Action by Unanimous Written Consent of the Members of D Squared, Defendant's Exhibit 21.

[45] Simon's objection to relevance of Harrison's discovery requests further suggests an intent to conceal information about the Mississippi property.  Simon knew that D Squared sold its property on March 3, 2021, yet he did not inform the trustee until May 11, 2021, after receiving, and objecting to as irrelevant, discovery requests about D Squared.

[46] Transcript Vol. 2, 3/29/22, Adversary No. 20-1041, P-175, p. 281, l. 20–p. 282, l. 19.

[47] Transcript Vol. 2, 3/29/22, Adversary No. 20-1041, P-175, p. 414, ll. 2-13.

[48] Transcript Vol. 2, 3/29/22, Adversary No. 20-1041, P-175, p. 435.

[49] Transcript Vol. 2, 3/29/22, Adversary No. 20-1041, P-175, p. 438, ll. 3-5.

A: That's correct.  In other words, if he was going to pay me back, that's up to him.  There was never a demand that that would happen.[50]

All these facts support the conclusion that had the trustee and creditors been apprised of all relevant facts concerning D Squared, events may have played out differently from the way they did.  But Simon did not disclose the alleged oral agreement or schedule his brother as a creditor.  His action deprived the trustee and creditors of the opportunity to investigate the asset and Denis's claim, [51] and if appropriate to object to that claim under Fed. R. Bankr. P. 3007.  The omissions circumvented the process of liquidation of assets and distribution to creditors that is the linchpin of the bankruptcy system.[52]

To summarize, Simon has not met his burden[53] of proving his lack of intent to hinder, delay or defraud creditors by allowing his share of D Squared's sale proceeds to be given to his brother and by concealing the transfer from the trustee and his creditors until forced to disclose it by Harrison's interrogatories and requests for production.  Instead, the evidence established that Simon transferred estate property (his financial interest in D Squared) to his brother post-petition with the intent to hinder, delay or defraud his creditors and concealed the transfer with the intent to hinder, delay or defraud his creditors.

Harrison's objection to Simon's discharge under section 727(a)(2)(B) is sustained.

---

[50] Transcript Vol. 2, 3/29/22, Adversary No. 20-1041, P-175, p. 438, ll. 3-14.  This is not to suggest that Denis's testimony was anything other than completely truthful.

[51] Had Simon scheduled his brother as a creditor, Denis would have received notice that the deadline for nongovernmental creditors to file proofs of claim was January 21, 2020.  *See* Notice of Chapter 7 Bankruptcy Case, P-4.  Under 11 U.S.C. § 101(5)(A) a *claim* is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."  In a chapter 7 case, the trustee makes distributions to holders of claims as 11 U.S.C. § 726 prescribes.

[52] *See* 11 U.S.C. § 726.

[53] The burden of proving intent shifted to Simon due to the familial relationship involved.  *See* p. 8-9, above.

### III. OBJECTION TO DISCHARGEABILITY

Because Simon is denied a discharge of all debts under section 727(a)(2)(B), Harrison's objection to dischargeability of his debt is moot.

Baton Rouge, Louisiana, September 30, 2022.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE